```
               UNITED STATES DISTRICT COURT
                  DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| SHEENA SLIPPI-MENSAH, | 1:15-cv-07750-NLH-JS |
| Plaintiff, | **OPINION** |
| v. | |
| TROOPER J.M. MILLS #7412, et al., | |
| Defendants. | |

**APPEARANCES**:

LINDA L. CAMPBELL
JOHN B. KEARNEY
KEARNEY & ASSOCIATES, P.C.
210 WHITE HORSE PIKE
P.O. BOX 279
HADDON HEIGHTS, NJ 08035
    On behalf of plaintiff

SUZANNE MARIE DAVIES
STATE OF NEW JERSEY
OFFICE OF THE ATTORNEY GENERAL
25 MARKET STREET
P.O. BOX 112
TRENTON, NJ 08625
    On behalf of defendants

**HILLMAN, District Judge**

    This case concerns allegations of racial profiling by New Jersey state troopers.  Presently before the Court is the motion of defendants to dismiss plaintiff's complaint.  For the reasons expressed below, defendants' motion will be granted, but plaintiff will be afforded leave to file an amended complaint within thirty days.

BACKGROUND

According to plaintiff's complaint, on May 24, 2014, at about 3:30am, plaintiff, Sheena Slippi-Mensah, was driving home from a friend's house in Philadelphia, PA.  Defendants, Trooper J.M. Mills #7412 and Trooper II A. M. Sparacio #6821 of the New Jersey State police, observed plaintiff, a young female African American driving a new Cadillac on 1-295.  The troopers pulled her over, stating that plaintiff was speeding and failed to maintain a single lane.  The troopers performed field sobriety tests, after which they arrested plaintiff for DUI and transported her to the station.  She was given two breath tests, which reported a reading of .00% blood alcohol level, and a urine test.  She was charged with Driving Under the Influence, Speeding, and Failure to Maintain Lane, and released to her mother.  Plaintiff claims that at the municipal court hearing, one of the defendants told the municipal prosecutor that they were going to hang plaintiff.

All of the charges against plaintiff were ultimately dismissed.  Plaintiff contends that because there does not appear to be any legitimate reason for stopping, arresting, and charging her, the motivation appears to be defendants' racial bias.  Based on these allegations, plaintiff has asserted claims for violations of her state and federal constitutional rights pursuant to the New Jersey Civil Rights Act, N.J.S.A. 10:6-2(c),

42 U.S.C. §§ 1983 and 1986, and conspiracy to violate her civil rights, 42 U.S.C. § 1988.  She has also asserted claims for "intentional tort," "reckless/gross negligence," negligence and "failure to train" for defendants' alleged the violation of the state's policy against racial profiling and one count under the New Jersey Law Against Discrimination.

Defendants have moved to dismiss plaintiff's claims on several bases.  In response, plaintiff concedes that her claims against the state, and the defendants acting in their official capacities, must be dismissed based on Eleventh Amendment immunity.  Plaintiff argues that the remainder of her claims are properly pleaded and may proceed.

## DISCUSSION

### A. Subject matter jurisdiction

Plaintiff has brought her claims pursuant to 42 U.S.C. § 1983, as well as the New Jersey constitution and New Jersey state law.  This Court has jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367.

### B. Standard for motion to dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as

3

true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for

4

the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6). First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950). Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). A complaint must do more than allege the plaintiff's entitlement to relief. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element"). A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig.,

5

114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice.  S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

    **C.  Analysis**

Defendants argue that plaintiff's claims against the arresting troopers, J.M. Mills and A.M. Sparacio, must be dismissed because not only are they too conclusory to withstand the Twombly/Iqbal analysis, the dashboard video footage of the traffic stop demonstrates that they acted properly and did not target plaintiff because of her race.  Defendants also argue

6

that plaintiff's claims against the supervisory defendants fail because they are conclusory without any supportive facts.

As a primary matter, the Court finds that it cannot consider the video in assessing the viability of plaintiff's complaint at this motion to dismiss stage, for two reasons. First, the video only encompasses one part of the events that are the basis for plaintiff's claims.  In addition to her claims related to the traffic stop, plaintiff's claims also include allegations regarding her treatment at the station, where she spent several hours being questioned, urine tested, and handcuffed, as well as comments made at the municipal court hearing.  The video does not show these events, and even if it could be found that the officers acted properly during the time the video was recording, it does not depict the subsequent events that also form the basis of plaintiff's claims.[1]

Second, even though defendants argue that because the "circumstances of the stop form the basis of plaintiff's claims, it is integral to the complaint, and can be considered by this court on a motion to dismiss" (Docket No. 8-4 at 10), this video does not qualify for the Pension Benefit's exception.  As set forth above, when deciding a motion to dismiss courts generally

---

[1] For this reason, even if the Court were to consider the video and convert defendants' motion into one for summary judgment, summary judgment would still be denied.

consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record, but a court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit, 998 F.2d at 1196.  What is critical to this exception "is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited."  Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (citation omitted).

    Plaintiff's complaint does not cite to, refer to, or attach the video footage of the traffic stop.  Simply because a video that captured the events complained of in the complaint exists does not transform that video into a "document" upon which the complaint is based.  For example, in Liebler v. City of Hoboken, 2016 WL 3965198 (D.N.J. July 21, 2016), the plaintiff alleged that the City of Hoboken and certain of its officials violated his First Amendment rights by shouting him down and ejecting him from a City Council meeting at which he was entitled to speak.  The defendants moved to dismiss plaintiff's complaint, and provided a link to a video of the Council meeting to support their motion.  The court declined to consider the video, explaining:

> I do not regard the video as comparable to, say, the

> written contract upon which an action for breach is based, which I would surely consider. Such a video might be considered on a motion to dismiss to establish, for example, that a particular identifiable statement was made. This is not such a case. The context of the statements, the identities and tone of voice of the speakers, the decisions that may have preceded or surrounded the meeting, and so on, all present issues of factual interpretation. In short, the video is not the sort of uncontroversial document that may itself settle the claims one way or the other. I believe that consideration of this video in isolation from its evidentiary context has the capacity to distort the analysis. I therefore exercise my discretion to decline consideration of it on this motion to dismiss.

Liebler, 2016 WL 3965198, at *2–3.

Similarly, and analogous to the case here, in Velez v. Fuentes, 2016 WL 4107689, at *8 (D.N.J. July 29, 2016), the state trooper defendants moved to dismiss a plaintiff's claims arising out of a traffic stop, and moved to dismiss plaintiff's claims, or for summary judgment in the alternative, based on the video of the plaintiff's stop. Defendants argued that discovery was not necessary because "'[t]he video of the [P]laintiff's arrest shows, as a matter of law, that the force used by Trooper Brettel was not excessive.'" The court declined to consider the video of the traffic stop:

> While the video of Plaintiff's arrest provides the Court with important insight into the events at issue, "[a]ny assessment of the probative value of video evidence must take into account that the camera, while an immutable witness, can only describe events from the particular perspective of the video's lens." Breeland v. Cook, No. 12-2511, 2014 WL 820167, at *4 (M.D. Pa. Mar. 3, 2014). For example, here the video does not capture the events leading up to the stop, nor does it allow the Court to hear everything said by Plaintiff, or see the interaction

9

>between Plaintiff, Trooper Brettel, and Patrolman McDonald when Plaintiff was on the ground.  The video evidence is "subject to all of the vagaries and limitations of [the camera's] perspective" and "commentators [have] caution[ed] courts to refrain from a reflexive reliance on equivocal video evidence when reaching ultimate legal conclusions." Id. (citations omitted).  While it is true that "where . . . there is video footage related to the claims, the Court will not draw inferences that are inconsistent with the video evidence," Samoles, 2014 WL 2602251, at *3 (citing Scott v. Harris, 550 U.S. 372, 380-81 (2007)), the Court is not required to accept the video tape as the only account of the incident.

Velez, 2016 WL 4107689, at *8; cf. Coles v. Carlini, 2012 WL 1079446, at *7 (D.N.J. Mar. 29, 2012) (finding that because plaintiffs submitted a DVD video of the traffic stop as an exhibit to their complaint, and there was no dispute over its authenticity, the court considered the video while deciding defendants' motion to dismiss without having to convert the motion into one for summary judgment).  Thus, for these reasons, the Court will not consider the video of the traffic stop in the context of defendants' motion to dismiss.[2]

The Court therefore turns to the substance of plaintiff's claims against the arresting troopers and the supervisory defendants.  For her constitutional violation claims, plaintiff alleges a laundry list of constitutional violations as a result of the traffic stop, the breath and urine tests, her arrest, and the municipal court hearing.  Without singling out which actor

---

[2] The Court has not viewed the video because the Court does not have a copy of the video.

perpetrated which constitutional violation and how, plaintiff collectively pleads that all the defendants, the arresting troopers as well as the supervisory defendants, violated her federal and state constitutional[3] rights of:

> a. freedom from unlawful arrest and seizure;
> b. freedom from prosecution without probable cause;
> c. freedom from the use of unreasonable, unjustified, and excessive force;
> d. right of due process of law;
> e. freedom from deprivation of liberty, and property without due process of law;
> f. freedom from unreasonable search and seizures;
> g. right to enjoy and defend life and liberty;
> h. right to pursue and obtain safety and happiness ;
> i. excess force while being arrested and/or while in custody and/or police brutality; and
> j. right to any other natural and unalienable right retained by the people.

(Compl. Count Six ¶ 2, Docket No. 1 at 20-21.)

To recover under 42 U.S.C. § 1983 against an individual, a plaintiff must show: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970).

---

[3] The New Jersey Civil Rights Act, N.J.S.A. 10:6–1 *et seq.*, was modeled after 42 U.S.C. § 1983 and creates a state law cause of action for violation of an individual's federal and state constitutional rights. Owens v. Feigin, 947 A.2d 653 (N.J. 2008).

More succinctly stated, § 1983 "provides a civil remedy for specific acts of constitutional deprivation." Brawer v. Horowitz, 535 F.2d 830, 839 (3d Cir. 1976).

Even though plaintiff may have pleaded facts that may support each of her ten alleged constitutional violations, it is her obligation under Rule 8 and Twombly/Iqbal to articulate the "specific acts of constitutional deprivation" for each defendant. For example, the facts to support a claim of unlawful seizure and excessive force may be different from the facts to support claims for equal protection and due process violations. See, e.g., United States v. Delfin-Colina, 464 F.3d 392, 396 (3d Cir.2006) (explaining that the "lawfulness of the initial traffic stop is properly analyzed under the Fourth Amendment, as a traffic stop is a 'seizure' within the meaning of the Fourth Amendment. The traffic stop is valid if the officer has a reasonable, articulable suspicion that a violation has occurred"); James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012) ("To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause."); Graham v. Connor, 490 U.S. 386, 394 (1989) ("Determining whether the force used to effect a particular seizure is 'reasonable' ... requires ... careful attention to the facts and circumstances of each particular case, including

the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."); Smith v. Mensinger, 293 F.3d 641, 650–51 (3d Cir. 2002) (explaining that a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior, but only if there is a realistic and reasonable opportunity to intervene); Bradley v. United States, 299 F.3d 197, 205 (3d Cir. 2002) ("To make an equal protection claim in the profiling context, [the plaintiff] was required to prove that the actions of customs officials (1) had a discriminatory effect and (2) were motivated by a discriminatory purpose."). It is plaintiff's obligation to provide each defendant with fair notice of what her claim is and the grounds upon which it rests. Her current complaint with collective claims against groups of defendants fails to do so.[4]  As it stands now, plaintiff's constitutional claims must be dismissed.

---

[4] The same can be said for plaintiff's conspiracy claims brought under 42 U.S.C. § 1985 (Count Eight).  Conspiracy claims under § 1985 must be pleaded with factual specificity.  Hauptmann v. Wilentz, 570 F. Supp. 351, 385 (D.N.J. 1983), aff'd, 770 F.2d 1070 (3d Cir. 1985), and aff'd sub nom. Appeal of Hauptmann, 770 F.2d 1070 (3d Cir. 1985); Handelman v. State of New Jersey, 2016 WL 3691976, at *11 (D.N.J. July 12, 2016) (citation omitted) ("[C]laims under Section 1985 must be pleaded with specificity in order to withstand a motion to dismiss. Broad, conclusory allegations, unsupported by specific facts implicating specific

13

Because, however, Third Circuit precedent "supports the notion that in civil rights cases district courts must offer amendment--irrespective of whether it is requested--when dismissing a case for failure to state a claim unless doing so would be inequitable or futile," <u>Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.</u>, 482 F.3d 247, 251 (3d Cir. 2007), the Court will allow plaintiff to file an amended complaint as to her constitutional violation claims set forth in Counts One, Six, Seven, Eight, and Nine. Such amendment does not appear to be inequitable or futile at this time.

The Third Circuit's notion of liberal amendment in civil rights cases does not apply to plaintiff's other claims. Based on the same facts, plaintiff has asserted claims for "intentional tort" (Count Two), "reckless/gross negligence" (Count Three), negligence (Count Four), and "failure to train" (Count Five), as well as a statutory claim alleging a violation of the New Jersey Law Against Discrimination (Count Ten), against the defendants collectively.[5] Plaintiff only separates the defendants into two categories within each of these claims –

---

defendants are insufficient to state a claim upon which relief can be granted.").

[5] The Court notes that "Intentional tort" and "failure to train" are not specific causes of action, and must be considered subsumed by plaintiff's other claims.

the arresting troopers who allegedly engaged in racial profiling, and the supervisory defendants who, passively or actively, sanctioned the racial profiling.[6]  Conclusory statements that the arresting troopers acted intentionally and recklessly and negligently by profiling her based on race, and that the supervisory defendants acted intentionally and recklessly and negligently in their supervision of the arresting troopers are insufficient under Rule 8 and Twombly/Iqbal, and must be dismissed.  Nonetheless, because plaintiff has requested leave to file an amended complaint to attempt to cure the pleading deficiencies raised by defendants, the Court will provide plaintiff with the opportunity to properly plead her state and common law claims as well.[7]

---

[6] Racial profiling is, in essence, a claim of selective prosecution, and arguments based on selective prosecution are grounded in equal protection.  State v. Ball, 887 A.2d 174, 182–83 (N.J. Super. Ct. App. Div. 2005).

[7] Amendments to pleadings are governed by Federal Civil Procedure Rule 15, which provides that the Court "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Third Circuit has shown a strong liberality in allowing amendments under Rule 15 in order to ensure that claims will be decided on the merits rather than on technicalities.  Dole v. Arco Chemical Co., 921 F.2d 484, 487 (3d Cir. 1990); Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989).  An amendment must be permitted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment.  Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

## **CONCLUSION**

Plaintiff is afforded leave to file an amended complaint to properly plead his claims against all defendants, except for the State of New Jersey and the defendants in their official capacities.  Thus, defendants' motion to dismiss will be granted, but plaintiff will be afforded leave to file an amended complaint within 30 days.  Plaintiff is reminded to be mindful of her obligations under Federal Civil Procedure Rules 8 and 11.

An appropriate Order will be entered.


Date:  September 14, 2016          s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.